UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

JILL E. MAREMONT,

                Plaintiff,

– against –

SUSAN FREDMAN DESIGN GROUP, LTD. AND SUSAN FREDMAN,

                Defendants.

ECF Case

Jury Trial Demanded

COMPLAINT

Case #:

    The Plaintiff, by and through her undersigned attorneys, alleges upon knowledge as to herself and her own acts, and as to all other matters upon information and belief, and brings this Complaint against the above-named Defendants, and in support thereof alleges the following:

## PRELIMINARY STATEMENT

    1.    This action is brought by the Plaintiff, Jill E. Maremont (the "Plaintiff"), who seeks monetary damages against the Defendants for violation of the Lanham Act (15 U.S.C. § 1125(a)), the Illinois Right of Publicity Act, 765 ILCS 1075, *et seq*. and the common law right of privacy after the Defendants impersonated the Plaintiff on Facebook.com ("Facebook") and Twitter.com ("Twitter") promoting the Defendants' business through Posts and Tweets during which time the Plaintiff was actually recovering from a tragic accident that severely injured the Plaintiff and a co-worker.

## JURISDICTION AND VENUE

    2.    Jurisdiction is conferred on this court by 28 U.S.C. § 1331 because the subject matter of the first cause of action arises under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). This court has supplemental jurisdiction over the second and third causes of action pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Defendants reside within this District.

## PARTIES

4. The Plaintiff, Jill E. Maremont, is an individual residing at 1547 North Honore, #3, Chicago, IL 60622.

5. The Defendant, Susan Fredman ("Fredman") is an individual residing at 1555 North Astor Street, Unit 4SE, Chicago, IL 60610.

6. The Defendant, Susan Fredman Design Group Ltd. ("SFDG") is an Illinois corporation with a principal place of business located at 350 West Erie, Suite 1S, Chicago, IL 60654. ("Fredman" and "SFDG" are collectively referred to as the "Defendants").

7. Based upon information and belief, Fredman is SFDG's sole shareholder.

## FACTUAL ALLEGATIONS

8. Fredman is one of Chicago's most prominent residential interior designers.

9. SFDG operates full-service offices in Chicago's River North and Michigan's Harbor Country with corresponding retail stores at each location, *Susan Fredman at Home in the City* and *Susan Fredman at Home with Nature*, SFDG also operates through its e-commerce site susanfredmanathome.com.

10. The Plaintiff is a professional interior designer who has been employed by SFDG from October, 2005 to date as SFDG's Director of Marketing, Public Relations and e-commerce

11. During her tenure at SFDG, the Plaintiff has personally become well known in the Chicago design community which allowed her to create a popular personal following on Facebook and Twitter.

12. In addition, the Plaintiff created a SFDG blog titled *"Designer Diaries: Tales from the Interior"* hosted at susanfredmandesigngroup.blogspot.com (*"Designer Diaries"*).

13. The Plaintiff authored frequent Posts and Tweets to her personal Facebook and Twitter accounts and authored material for the Defendants' *Designer Diaries* blog.

14. The Plaintiff's image appeared on each personal Post and Tweet, which unmistakably distinguished her likeness.

*The September 15, 2009 Accident.*

15. On the afternoon of September 15. 2009, the Plaintiff and her co-worker, Bridget Albert ("Ms. Albert"), went out to purchase candy for a SFDG sponsored event.

16. As the Plaintiff and Ms. Albert crossed the street at the corner of Orleans and Ohio, a silver Honda ran a stoplight, crashed into a cab and careened into the Plaintiff and Ms. Albert.

17. The Plaintiff and Ms. Albert were rushed to the emergency room at Northwestern Memorial Hospital ("Northwestern").

18. In the emergency room, the Plaintiff received multiple stitches in her head and wrist and was diagnosed with five broken ribs, a shattered right shoulder, a broken left hip and a broken right pelvis.

19. Ms. Albert was not as fortunate; she was in critical condition with multiple injuries, including a fractured skull. Ms. Albert was subsequently transferred to the Intensive Care Unit where she remained in a coma for 30 days.[1]

20. On September 16, 2009, the Plaintiff underwent surgery to repair her right shoulder.

---

[1] Ms. Albert survived the accident but remains disabled with 24x7 homecare.

21. Shortly thereafter, Fredman and another SFDG employee visited the Plaintiff carrying a notepad and questioned the Plaintiff about work projects.

22. While at Northwestern, the Plaintiff was notified by a visitor that the Defendants were impersonating her by authoring Posts and Tweets to the Plaintiff's personal Facebook and Twitter followers, promoting SFDG. Each Post and Tweet displayed the Plaintiff's name and image, giving followers the appearance that the Plaintiff authored the Posts and Tweets.

23. Thereafter, the Plaintiff asked Fredman and other employees of SFDG to refrain from impersonating her on Facebook and Twitter as it appeared to the Plaintiff's Facebook and Twitter followers that the Plaintiff's injuries were not severe and that she had returned to work.

24. Despite the Plaintiff's request, the Defendants continued to impersonate the Plaintiff by authoring Posts and Tweets to the Plaintiff's followers.

25. On or about September 24, 2009, the Plaintiff was transferred to the Rehabilitation Institute of Chicago ("RIC") for comprehensive physical, occupational and psychological therapy.

26. Fredman and other employees of SFDG visited the Plaintiff frequently.

27. The Plaintiff was discharged from RIC at the end of October, 2009, but due to her injuries and confinement to a wheelchair, the Plaintiff was unable to return to her own home. Additionally, the Plaintiff's closed brain injury, dizziness, and sensitivity to light and sound prevented her from logging into her personal Facebook and Twitter accounts.

28. The Plaintiff moved into her in-laws' handicap accessible home in Chicago, where she remained for several months and continued to receive daily outpatient physical, occupational and physiological therapy.

29. Fredman and other employees of SFDG visited the Plaintiff frequently at her in-laws's home.

30. On December 11, 2009, the Plaintiff's husband read her some of the Posts and Tweets that the Defendants authored impersonating the Plaintiff causing the Plaintiff to suffer severe mental distress.

31. The Plaintiff had her husband immediately changed the passwords to her personal Facebook and Twitter accounts.

32. Thereafter, the Plaintiff received a text message from Fredman asking the Plaintiff if she had changed her Facebook and Twitter passwords.

33. After the Plaintiff advised Fredman that she had indeed changed her passwords, Fredman ceased all visits and communication with the Plaintiff. Based upon information and belief, Fredman also instructed SFDG's employees to stop visiting the Plaintiff.

34. In February, 2010, the Plaintiff contacted Fredman by telephone to discuss a strategy to return to work and scheduled a dinner with Fredman.

35. During that dinner, the Plaintiff immediately noticed a change in Fredman's attitude towards her -- Fredman was hostile and cold.

36. In May, 2010, the Plaintiff's physicians agreed that the Plaintiff could return to work on a two week, part-time, trial basis and sent a letter to Fredman regarding the same.

37. On May 17, 2009, the Plaintiff returned to work on what was supposed to be a part-time basis.

38. On her first day back at SFDG, the Plaintiff was given no accommodation for her injuries and was forced to return to SFDG's crowded and loud environment without even a place for the Plaintiff to comfortably sit.

39. The Plaintiff's two-week, part-time trial return to SFDG did not go well as she was made to feel unwelcome and was pushed to work more than part-time as her physicians had ordered.

40. On May 27, 2010, Fredman met with the Plaintiffs' parents in Savannah, Georgia and assured them that she would do "whatever it takes" to support the Plaintiff and ease her back into her job.

41. However, on May 31, 2010, Fredman visited the Plaintiff at her home in Chicago and advised her that, despite the Plaintiff's physicians' orders, SFDG was unwilling to allow the Plaintiff to return to work part-time.

42. During that meeting, Fredman also advised her that SFDG was having cash flow issues and that SFDG was going to restructure its business to reduce design services and focus more on its retail stores and e-commerce site. Fredman mentioned that one of the causes of her cash flow problems was increased insurance rates, essentially blaming the Plaintiff and Ms. Albert.

43. Based upon information and belief, Fredman came to the Plaintiff's home on May 31, 2009 for the purpose of forcing the Plaintiff to resign from SFDG.

44. Based upon Fredman's obvious hostility towards the Plaintiff and upon her physicians' advice, the Plaintiff did not return to work at SFDG and continues to receive disability and medical expense benefits from the Defendants' workers compensation carrier.

45. The Plaintiff has not been terminated by SFDG nor has Plaintiff resigned from her employment at SFDG.

## CAUSES OF ACTION

### COUNT I
### FALSE DESIGNATION OF ORIGIN
(The Lanham Act, 15 U.S.C. § 1125(a))

46. The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

47. 15 U.S.C. § 1125(a) provides, in pertinent part, "[a]ny person who, on or in connection with any goods or services...uses in commerce any word, term, name, symbol, or device, or any combination thereof...which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person…or approval of his or her goods, services, or commercial activities by another person…shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

48. Fredman and/or SFDG used the Plaintiff's likeness in a false or misleading way that is likely to cause confusion, mistake and/or deceive as to who authored the Posts and Tweets because the Defendants impersonated the Plaintiff.

49. Fredman and/or SFDG used the Plaintiff's likeness without the Plaintiff's consent and with reckless disregard for the Plaintiff's rights.

50. The Defendants' actions constitute a false designation of origin in violation of 15 U.S.C. § 1125(a).

51. As a result of the Defendants' conduct, the Plaintiff is entitled to monetary damages in an amount to be determined at trial.

52. As a result of the Defendants' conduct, the Plaintiff suffered severe emotional distress which was exacerbated by the Defendants' relentless pursuit of their own business interests without regard to the Plaintiff's health.

## COUNT II
## RIGHT OF PUBLICITY
## (765 ILCS 1075)

53. The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

54. 765 ILCS 1075/30(a), the Right of Publicity Act states that:

A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent…

55. Fredman and/or SFDG used the Plaintiff's likeness for the purpose of promoting the Defendants' design business and retail store.

56. Fredman and/or SFDG used the Plaintiff's likeness without the Plaintiff's written consent.

57. As a result of the Defendants' conduct, the Plaintiff is entitled to monetary damages in an amount to be determined at trial.

58. As a result of the Defendants' conduct, the Plaintiff suffered severe emotional distress which was exacerbated by the Defendants' relentless pursuit of their own business interests without regard to the Plaintiff's health.

## COUNT III
## COMMON LAW RIGHT OF PRIVACY

59. The Plaintiff repeats and realleges each of the allegations set forth above as though they were fully set forth herein.

60. Fredman and/or SFDG misappropriated the Plaintiff's name and image for

8

commercial purposes without the Plaintiff's consent.

61. The Defendants' actions were conducted in reckless disregard of the Plaintiff's rights.

62. As a result of the Defendants' conduct, the Plaintiff is entitled to monetary damages in an amount to be determined at trial.

63. As a result of the Defendants' conduct, the Plaintiff suffered severe emotional distress which was exacerbated by the Defendants' relentless pursuit of their own business interests without regard to the Plaintiff's health.

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter judgment against the Defendants as follows:

1. Award the Plaintiff actual damages in an amount to be determined at trial;

2. Award the Plaintiff the Defendants' profits which are attributable to any sales that resulted from the Posts or Tweets;

3. Award the Plaintiff punitive damages;

4. Award the Plaintiff costs and reasonable attorney's fees; and

5. Award the Plaintiff such other and further relief as the Court may deem just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a trial by jury.

Dated: Chicago, Illinois
December 9, 2010

        Respectfully submitted,

        SMITHAMUNDSEN LLC

        _____

        Ryan B. Jacobson, Esq.
        150 North Michigan Avenue, Suite 3300
        Chicago, IL 60601
        (312) 894-3252
        rjacobson@salawus.com

        Randall S. Newman, Esq. (*to be admitted pro hac vice*)
        Randall S. Newman, P.C.
        37 Wall Street, PH D
        New York, New York 10005
        (212) 797-3737
        rsn@randallnewman.net

        *Attorneys for Plaintiff,*
        *Jill E. Maremont*