**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JILL E. MAREMONT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  10 C 7811 |
| v. | ) | |
| | ) | |
| SUSAN FREDMAN DESIGN GROUP, | ) | |
| LTD. AND SUSAN FREDMAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Judge:

On December 9, 2010, Plaintiff Jill E. Maremont filed the present Complaint alleging a violation of the Lanham Act, 15 U.S.C. § 1125(a), against Defendants Susan Fredman Design Group, Ltd. ("SFDG") and Susan Fredman (Count I).  *See* 28 U.S.C. § 1331.  Pursuant to the Court's supplemental jurisdiction, Maremont also alleges a claim under the Illinois Right of Publicity Act, 765 ILCS 1075, *et seq.* (Count II) and a common law right to privacy claim (Count III).  *See* 28 U.S.C. § 1367(a).  Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion for summary judgment under Rule 56(b).  Because Defendants' Northern District of Illinois Local Rule 56.1(a) Statement of Facts relies solely on the allegations in the Complaint –  which are not evidence for summary judgment purposes – the Court denies Defendants' motion for summary judgment without prejudice and construes the present motion as a motion to dismiss pursuant to Rule 12(b)(6).  *See Nisenbaum v. Milwaukee County,* 333 F.3d 804, 810 (7th Cir. 2003) ("Allegations in a complaint are not evidence"); *see also Gunville v. Walker,* 583 F.3d 979, 985 (7th Cir. 2009) (courts may

only consider admissible evidence in determining motions for summary judgment).[1]  For the

following reasons, the Court grants in part and denies in part Defendants' motion to dismiss.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago*

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  Pursuant to Rule 8(a)(2), a complaint must

include "a short and plain statement of the claim showing that the pleader is entitled to relief."

Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the

defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic v.*

*Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v.*

*Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)).  Under the federal notice pleading

standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly,* 550 U.S. at 555.  Put differently, a "complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570).  "[W]hen

ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual

allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197,

---

[1]  Plaintiff's attempt to amend the Complaint by attaching an Amended Complaint to an affidavit fails to follow the proper procedural rules, including Northern District of Illinois Local Rule 5.3(b); therefore, the Court denies Plaintiff's motion for leave to amend the Complaint without prejudice.  Similarly, the Court denies Plaintiff's cross-motion for partial summary judgment brought pursuant to Rule 56(a) without prejudice because Plaintiff has failed to follow the appropriate procedural rules, including Local Rule 5.3(b) and 56.1(a).  The Court reminds Plaintiff's counsel that the Northern District of Illinois Local Rules govern this action and not the Local Rules for the United States Courts for the Southern and Eastern Districts of New York.

167 L.Ed.2d 1081 (2007); *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept

factual allegations as true and draw all reasonable inferences in plaintiff's favor).  A "Rule

12(b)(6) motion must be decided solely on the face of the complaint and any attachments that

accompanied its filing."  *See Miller v. Herman,* 600 F.3d 726, 733 (7th Cir. 2010) (citing

Fed.R.Civ.P. 10(c)).

## BACKGROUND

In her Complaint, Maremont alleges that Defendant Susan Fredman ("Fredman") is one

of Chicago's prominent residential interior designers.  (R. 1, Compl. ¶ 8.)  Maremont further

alleges that SFDG operates full-service offices in Chicago's River North and Michigan's Harbor

Country with corresponding retail stores at each location.  (*Id.* ¶ 9.)  SFDG also operates its

business through an e-commerce site.  (*Id.*)  Maremont alleges that she is a professional interior

designer that SFDG employed starting in October 2005 as SFDG's Director of Marketing, Public

Relations, and e-commerce.  (*Id.* ¶ 10.)

During her tenure at SFDG, Maremont maintains that she became well-known in the

Chicago design community allowing her to create a popular personal following on Facebook and

Twitter.  (*Id.* ¶ 11.)  Maremont also alleges that she created a SFDG blog entitled "Designer

Diaries: Tales from the Interior" ("Designer Diaries") that is hosted on SFDG's blog.  (*Id.* ¶ 12.)

Maremont maintains that she authored frequent Posts and Tweets to her personal Facebook and

Twitter accounts, along with the material for the Defendants' Designer Diaries blog.  (*Id.* ¶ 13.)

Maremont's image appeared on each personal Post and Tweet, which unmistakably

distinguished her likeness.  (*Id.* ¶ 14.)

On September 15, 2009, Maremont and her co-worker, Bridget Albert, left the office to

purchase supplies for a SFDG-sponsored event. (*Id.* ¶ 15.) As Maremont and Albert crossed the street, an automobile ran a stoplight, crashed into a cab, and hit both Maremont and Albert. (*Id.* ¶ 16.) After Maremont and Albert were rushed to the emergency room at Northwestern Memorial Hospital, Maremont received stitches in her head and wrist and was diagnosed with five broken ribs, a shattered right shoulder, a broken left hip, and a broken right pelvis. (*Id.* ¶¶ 17, 18.) On September 16, 2009, Maremont underwent surgery to repair her right shoulder. (*Id.* ¶ 19.)

Shortly thereafter, Fredman and another SFDG employee visited Maremont at the hospital and asked her about her work projects. (*Id.* ¶ 21.) Also while at Northwestern Memorial Hospital, a visitor told Maremont that Defendants were impersonating her by authoring Posts and Tweets to her personal Facebook and Twitter followers promoting SFDG. (*Id.* ¶ 22.) Maremont also alleges that each Post and Tweet displayed Maremont's name and image giving followers the appearance that she was the author. (*Id.*) Maremont then asked Fredman and other SFDG employees to refrain from impersonating her on Facebook and Twitter because it appeared to Maremont's followers that her injuries were not severe and that she had returned to work. (*Id.* ¶ 23.) Despite Maremont's request, Defendants continued to impersonate her by authoring her Posts and Tweets. (*Id.* ¶ 24.)

On September 24, 2009, Maremont was transferred to the Rehabilitation Institute of Chicago ("RIC") for physical, occupational, and psychological therapy. (*Id.* ¶ 25.) Fredman and other SFDG employees visited Maremont at RIC. (*Id.* ¶ 26.) At the end of October 2009, Maremont was discharged from RIC, but due to her injuries and confinement to a wheelchair, she was unable to return to her own home. (*Id.* ¶ 27.) Instead, Maremont moved into her in-

4

laws' handicapped accessible home in Chicago, where she remained for several months while she continued to receive daily outpatient physical, occupational, and physiological therapy. (*Id.* ¶ 28.) Maremont further alleges that Fredman and other SFDG personnel visited her at her in-laws' home. (*Id.* ¶ 29.)

On December 11, 2009, Maremont's husband read to her some of the Posts and Tweets that the Defendants authored impersonating her, which caused Maremont to suffer severe mental distress. (*Id.* ¶ 30.) Maremont and her husband immediately changed the passwords to her personal Facebook and Twitter accounts. (*Id.* ¶ 31.) Fredman then text messaged Maremont asking her whether she had changed her Facebook and Twitter passwords. (*Id.* ¶ 32.) After Maremont advised Fredman that she had changed her passwords, Fredman ceased all visits and communication with Maremont. (*Id.* ¶ 33.) Maremont further alleges that Fredman also instructed SFDG employees to stop visiting Maremont. (*Id.*)

In addition, Maremont alleges that in February 2010 she contacted Fredman by telephone to discuss a strategy to return to work. (*Id.* ¶ 34.) In May 2010, Maremont's physicians agreed that she could return to work on a two week, part-time, trial basis and sent a letter to Fredman regarding the same. (*Id.* ¶ 36.) On May 17, 2010, Maremont returned to work on what was supposed to be a part-time basis. (*Id.* ¶ 37.) Maremont also alleges that her two-week trial did not go well because she was made to feel unwelcome and was pushed to work more than part-time as her physicians had ordered. (*Id.* ¶ 39.)

On May 31, 2010, Fredman visited Maremont at her home in Chicago and advised her that SFDG was unwilling to allow her to return to work part-time. (*Id.* ¶ 41.) During that meeting, Fredman also advised Maremont that SFDG was having cash flow problems and that

SFDG was going to restructure its business to reduce design services and focus more on its retail stores and e-commerce site. (*Id*. ¶ 42.) Fredman mentioned that one of the causes of the cash flow problems was increased insurance rates. (*Id*.) Maremont alleges that based upon Fredman's hostility towards her and based upon her physicians' advice, Maremont did not return to work at SFDG. (*Id*. ¶ 44.)

## ANALYSIS

### I.     Lanham Act Claim – Count I

In Count I of her Complaint, Maremont alleges a false association claim, also known as a false endorsement claim, under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). As the Seventh Circuit explains, one bases of liability under the Lanham Act includes "false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device." *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 575 (7th Cir. 1993). "False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Stayart v. Yahoo! Inc.,* 651 F.Supp.2d 873, 880-81 (E.D. Wis. 2009) (popularity or celebrity not necessary to bring false endorsement claim). More specifically, a "false endorsement claim based on the unauthorized use of a [person's] identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.,* a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1110 (9th Cir. 1992).

Here, Maremont has sufficiently alleged that – as a professional interior designer – she become well-known in the Chicago design community allowing her to create a popular personal following on Facebook and Twitter. Maremont also alleges that her Tweets and Posts relate to her work in a commercial context, namely, as a professional interior designer and employee of SFDG. Also, construing the facts and all reasonable inferences in Maremont's favor, she alleges that she was engaged in the commercial marketing of her skills when Defendants wrongfully used her name and likeness by authoring Tweets and Posts under her name. *See Stayart,* 651 F.Supp.2d at 881. As such, Maremont alleges a commercial injury based on Defendants' deceptive use of her name and likeliness. *See Waits,* 978 F.2d at 1110. Therefore, Maremont has sufficiently alleged a false endorsement claim under the Lanham Act, and thus the Court denies Defendants' motion to dismiss Count I.

## II.      Right to Publicity Claim – Count II

In Count II of the Complaint, Maremont alleges that Fredman and/or SFDG used her likeness for the purpose of promoting Defendants' design business and retail store without Maremont's written consent in violation of Illinois' Right to Publicity Act. Specifically, 765 ILCS 1075/30(a) states in relevant part: "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons." In their motion to dismiss, Defendants argue that Maremont's Right to Publicity Act claim accrued sometime in September 2009 – the approximate date of Defendants' first Tweet impersonating Maremont – which was more than one year before she filed the present lawsuit on December 9, 2010. As such, Defendants argue that this claim is untimely under the one-year limitations period. *See Blair v. Nevada Landing*

*P'ship,* 369 Ill.App.3d 318, 322, 307 Ill.Dec. 511, 859 N.E.2d 1188 (Ill. 2006).

Here, Maremont does not dispute that the statute of limitations for her Illinois Right to

Publicity Act claim is one year, but that the limitations period began to run on the date of

Defendants' last unlawful Tweet, December 11, 2009, based on the continuing violation rule. As

the Illinois Appellate Court in *Blair* teaches:

> Under the "continuing violation rule," where a tort involves a continuing or
> repeated injury the limitations period does not begin to run until the date of the
> last injury or the date the tortious acts cease. A continuing violation is occasioned
> by continuing unlawful acts and conduct, not by continual ill effects from an
> initial violation. However, where there is a single overt act from which
> subsequent damages may flow, the statute begins to run on the date the defendant
> invaded the plaintiff's interest and inflicted injury, and this is so despite the
> continuing nature of the injury.

*Blair*, 369 Ill.App.3d at 323 (internal citations omitted).

From Maremont's allegations, on December 11, 2009 her husband read her some of the

Posts and Tweets that the Defendants authored impersonating her and she immediately changed

the passwords to her personal Facebook and Twitter accounts. Maremont maintains that

Fredman then text messaged Maremont asking her whether she had changed her Facebook and

Twitter passwords and Maremont advised Fredman that she had done so. Prior to her discovery

of these Posts and Tweets in December 2009, Maremont alleges that while she was at

Northwestern Memorial Hospital in September 2009, a visitor told her that Defendants were

impersonating her by authoring Posts and Tweets to her personal Facebook and Twitter

followers promoting SFDG. Thereafter, Maremont asked Fredman and other SFDG employees

to refrain from impersonating her, yet despite her request, Defendants continued to do so.

Viewing these facts and all reasonable inferences in her favor, Maremont has alleged that

Defendants continually invaded her interest by impersonating her in multiple Posts and Tweets

discussing different aspects of interior design starting sometime in September 2009 until December 11, 2009. Under these allegations, Maremont's Illinois Right to Publicity Act claim is timely because she filed the present lawsuit on December 9, 2010. Therefore, the Court denies Defendants' motion to dismiss Count II of the Complaint.

## III.    Common Law Right of Privacy Claim – Count III

In Count III of the Complaint, Maremont alleges that Fredman and/or SFDG misappropriated her name and image for commercial purposes without Maremont's consent, and thus Defendants are liable under the common law right of privacy. The common law appropriation of likeness is one of four common law invasion of privacy torts. *See Blair*, 369 Ill.App.3d at 322. Further, as the *Blair* court explains, "[a]fter December 31, 1998, the common-law tort of appropriation of one's likeness ceased to exist. The Right of Publicity Act, effective January 1, 1999, completely replaced the common-law tort of appropriation of likeness, although it did not affect the other three common-law privacy torts." *Id*. at 322-23; *see also Flentye v. Kathrein,* 485 F.Supp.2d 903, 923 (N.D. Ill. 2007) (Right to Publicity Act replaced common law tort of appropriation of likeness). Because the Illinois Right to Publicity Act replaced common law appropriation of likeness claims, the Court grants Defendants' motion to dismiss any such claim.

Nonetheless, Maremont maintains that she has sufficiently alleged two other common law invasion of privacy torts: (1) unreasonable intrusion upon the seclusion of another and (2) a claim based on publicity that reasonably places another in a false light before the public. *See Blair,* 369 Ill.App.3d at 322. The Court disagrees. First, Maremont fails to develop her argument that Defendants' intrusion into her personal "digital life" is actionable under the

common law theory of unreasonable intrusion upon the seclusion of another. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted). Meanwhile, viewing the facts and all reasonable inferences in Maremont's favor, she has failed to sufficiently allege a false light claim because she has not alleged that Defendants acted with actual malice, nor has she alleged special damages. *See Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918, 927 (7th Cir. 2003); *Cf. Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.,* 227 Ill.2d 381, 390, 1018, 317 Ill.Dec. 855, 882 N.E.2d 1011 (Ill. 2008). Accordingly, the Court grants Defendants' motion to dismiss Count III of the Complaint without prejudice.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' motion to dismiss and denies Defendants' motion for summary judgment without prejudice. In addition, the Court denies Plaintiff's motion for partial summary judgment and leave to amend without prejudice. Plaintiff has until April 5, 2011 to file an Amended Complaint consistent with this order.

**Dated:** March 15, 2011

ENTERED

_____

**AMY J. ST. EVE**
**United States District Court Judge**

10