**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JILL E. MAREMONT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 10 C 7811 |
| v. | ) |
| | ) |
| SUSAN FREDMAN DESIGN GROUP, | ) |
| LTD. and SUSAN FREDMAN, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

In her Second Amended Complaint, Plaintiff Jill E. Maremont alleges violations of the Lanham Act, 15 U.S.C. § 1125(a), and Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, against Defendants Susan Fredman Design Group, Ltd. ("SFDG") and Susan Fredman (Counts I and II). *See* 28 U.S.C. § 1331. Pursuant to the Court's supplemental jurisdiction, Maremont also alleges a claim under the Illinois Right of Publicity Act, 765 ILCS 1075, *et seq.* (Count III) and a common law right to privacy claim (Count IV). *See* 28 U.S.C. § 1367(a).

Before the Court is Defendants' motion for summary judgment and Plaintiff's motion for partial summary judgment as to Counts I, II, and III of the Second Amended Complaint – both pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court grants in part and denies in part Defendants' motion for summary judgment and denies Plaintiff's motion for partial summary judgment. The Court dismisses Plaintiff's Illinois Right of Publicity Act claim as alleged in Count III and common law right to privacy claim as alleged in Count IV with prejudice.

## BACKGROUND

I.   **Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 assists the Court by "organizing the evidence, identifying undisputed facts, and demonstrating precisely how each side propose[s] to prove a disputed fact with admissible evidence." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). "The Rule is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Also, Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

The purpose of Local Rule 56.1 statements is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). Therefore, the Court will not address the parties' legal and factual arguments

made in their Rule 56.1 statements and responses.  *See System Dev. Integration, LLC v. Computer Sciences Corp.,* 739 F.Supp.2d 1063, 1068 (N.D. Ill. 2010).  Moreover, the requirements for responses under Local Rule 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted."  *Bordelon,* 233 F.3d at 528.

The Court may also disregard statements and responses that do not properly cite to the record.  *See Cady,* 467 F.3d at 1060; *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 809-10 (7th Cir. 2005).  Because Defendants failed to respond to Maremont's Rule 56.1 Statement of Additional Facts, all of Maremont's additional facts are deemed admitted.  *See* N.D. Ill. Local Rule 56.1(b)(3)(C); *Parra v. Neal,* 614 F.3d 635, 636 (7th Cir. 2010).

## II.     Relevant Facts

Defendant SFDG is an interior design firm headquartered in Chicago and incorporated in the State of Illinois.  (R. 39, Defs.' Rule 56.1 Stmt. Facts ¶ 1.)  Defendant Fredman owns SFDG.  (*Id*. ¶ 2.)  During the relevant time period, SFDG employed Maremont as the Director of Marketing, Public Relations, and E-commerce.  (*Id*. ¶ 3.)  Maremont's annual compensation included a bonus contingent upon SFDG's gross sales exceeding certain threshold levels.  (*Id.* ¶ 14.)  Accordingly, Maremont's social media efforts to promote SFDG's sales qualified her for bonuses.  (*Id.* ¶ 15.)  During the course of Maremont's employment at SFDG, she became well known in the Chicago design community and had developed a personal Twitter following of approximately 1,250 people.  (R. 44, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 34.)

As part of a social media marketing campaign for SFDG, Maremont created the SFDG blog titled "*Designer Diaries: Tales from the Interior*" that was hosted on SFDG's website.  (*Id.* ¶ 40; Defs.' Stmt. Facts ¶ 5.)  Although it is undisputed that Maremont opened a Twitter account

using an SFDG computer at SFDG's offices, it is also undisputed that Maremont's personal Twitter and Facebook accounts were not for the benefit of SFDG. (Defs.' Stmt. Facts ¶ 6; Pl.'s Stmt. Facts ¶ 35.) Maremont, however, also opened a Facebook account for SFDG that was not her personal Facebook account. (Defs.' Stmt. Facts ¶ 9.) Maremont used Facebook and Twitter posts to promote SFDG by linking them to SFDG's blog and website. (Defs.' Stmt. Facts ¶ 10.) Maremont entered and stored all account access information, including passwords for her Twitter and Facebook accounts, on the SFDG server by utilizing a SFDG-owned computer, although the folder in which she stored this information was locked and Maremont never gave authority to anyone to access her personal Twitter and Facebook accounts. (*Id.* ¶ 11; Pl.'s Stmt. Facts ¶ 42.)

On September 15, 2009, an automobile struck Maremont and a SFDG co-worker while they were on a work-related errand. (Defs.' Stmt. Facts ¶ 16.) The accident seriously injured Maremont and her co-worker. (*Id.*) Specifically, Maremont suffered serious brain trauma and still suffers from post-concussion syndrome and post-traumatic stress disorder. (*Id.* ¶ 25.) While she was hospitalized for her injuries between September 15 and 24, 2009, Maremont found out that SFDG had posted entries on her Facebook page promoting SFDG. (*Id.* ¶ 17.) Maremont admits, however, that she did not see these Facebook entries and has no copies of them. (*Id.* ¶ 18.) Also when she was hospitalized, Maremont discovered that SFDG posted Tweets on her Twitter account promoting SFDG. (*Id.* ¶ 19; Pl.'s Stmt. Facts ¶¶ 51, 63.) Maremont has copies of seventeen Tweets posted during her absence from SFDG. (Defs.' Stmt. Facts ¶ 20.) The first of these Tweets was posted on September 21, 2009 and was linked to an SFDG blog written by Fredman explaining Maremont's accident. (*Id.* ¶ 21.) This blog entry also announced that

during Maremont's absence, a guest blogger, Olivia Fink-Larsen, would assume Maremont's role at SFDG. (*Id*.) The other Tweets promoted SFDG and in some cases linked readers to the SFDG blog or website. (*Id.*)

Meanwhile, Maremont asked Fredman and her employees to refrain from posting updates to her Facebook page and Twitter account while she was in the hospital and not working at SFDG, yet SFDG employees failed to refrain from doing so. (Pl.'s Stmt. Facts ¶¶ 53, 54.) On December 11, 2009, Maremont and her husband changed the password on her Twitter account. (*Id.* ¶¶ 59, 60; Defs.' Stmt. Facts ¶ 23.) Maremont maintains that she suffered severe emotional distress when she realized that Defendants had sent out Tweets and Facebook posts from her personal Twitter and Facebook accounts promoting SFDG's business. (Pl.'s Stmt. Facts ¶ 65.)

On May 17, 2010, Maremont returned to work at SFDG on a part-time basis. (Defs.' Stmt. Facts ¶ 27.) The next day, May 18, 2010, Maremont wrote Facebook and Twitter posts that she linked to a May 17, 2010 entry on SFDG's blog in which she announced "Your Editor is Back!" (*Id.* ¶ 28.) In these posts, Maremont thanked her temporary replacements, Olivia Fink-Larson and Michelle Doorman, "for their amazing posts on Designer Diaries in my absence and Michelle's giant contribution to the Chicago Interior Designers at the Susan Fredman Design Group as the acting Marketing Director." (*Id.*) On June 1, 2010, Maremont's doctor recommended that she stop work completely due to her post-concussion syndrome symptoms. (*Id*. ¶ 29.) Thereafter, Maremont followed her doctor's recommendation and stopped working at SFDG. (*Id*.)

On December 10, 2010, Maremont filed the present lawsuit and on February 28, 2011, Maremont sent a letter by certified mail to Susan Rosie, SFDG's President, announcing her

intention to return to work part-time at SFDG on March 17, 2011. (*Id*. ¶¶ 30, 31.) On March 8, 2011, SFDG's lawyer responded by letter to Maremont's attorneys advising them that SFDG had filled Maremont's position after her father directed SFDG employees not to contact Maremont under any circumstances. (*Id*. ¶ 32.) By March 17, 2011, a public relations firm known as "Jo Chicago" had hired Maremont. (*Id*. ¶ 33.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, courts must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

### I.    Lanham Act Claim – Count I

In Count I of her Second Amended Complaint, Maremont alleges a false association claim, also known as a false endorsement claim, under the Lanham Act, 15 U.S.C. §

6

1125(a)(1)(A). As the Seventh Circuit explains, one basis of liability under the Lanham Act includes "false representations concerning the origin, association or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress or other device." *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 575 (7th Cir. 1993). "False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Stayart v. Yahoo! Inc.,* 651 F.Supp.2d 873, 880 (E.D. Wis. 2009). More specifically, a "false endorsement claim based on the unauthorized use of a [person's] identity is a type of false association claim, for it alleges the misuse of a trademark, *i.e.,* a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1110 (9th Cir. 1992).

In their motion for summary judgment, Defendants argue that Maremont does not have standing to bring her false endorsement claim. To have standing to bring a false endorsement claim under the Lanham Act, a "party need not be in direct competition with a defendant to challenge a defendant's practices under the Act," instead, "[a]ll a commercial party needs to bring suit under the Act is a 'reasonable interest to be protected' against activities that violate the Act." *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.,* 871 F.2d 697, 700 (7th Cir. 1989) (citations omitted); *see also Waits,* 978 F.2d at 1110. In short, to satisfy the prudential standing requirement for a false endorsement claim under the Lanham Act, a plaintiff must show an intent to commercialize an interest in her identity. *See Dovenmuehle*, 871 F.2d at 700; *Stayart,* 651 F.Supp.2d at 881.

Although promoting SFDG on Facebook and Twitter was part of Maremont's marketing strategy while she was employed as SFDG's Director of Marketing, Public Relations, and E-Commerce, it is undisputed that Maremont created a personal following on Twitter and Facebook for her own economic benefit and also because if she left her employment at SFDG, she would promote another employer with her Facebook and Twitter followers. (Pl.'s Stmt. Facts ¶¶ 47-49.) As such, Maremont has satisfied the prudential standing requirement for a false endorsement claim because she has a protected, commercial interest in her name and identity within the Chicago design community. *See Dovenmuehle,* 871 F.2d at 700.

Next, Defendants argue that because Maremont did not suffer a financial injury, and her false endorsement claim must fail. *See L.S. Heath & Son, Inc.,* 9 F.3d at 575; *Web Printing Controls Co. v. Oxy–Dry Corp.,* 906 F.2d 1202, 1204-05 (7th Cir. 1990). To clarify, in "order to recover damages for a purported Lanham Act violation, the plaintiff 'must demonstrate that it has been damaged by actual consumer reliance on the misleading statements.'" *L.S. Heath & Son, Inc.,* 9 F.3d at 575 (quoting *Web Printing,* 906 F.2d at 1205). As such, Maremont must show that she "suffered actual injury, *i.e.,* a loss of sales, profits, or present value (goodwill)" or that Defendants were unjustly enriched. *See Web Printing*, 906 F.2d at 1205; *see also Badger Meter, Inc. v. Grinnell Corp.,* 13 F.3d 1145, 1157 (7th Cir. 1994).

Defendants filed their summary judgment motion on September 9, 2011 – over two months before the discovery cutoff date of November 18, 2011. Meanwhile, the Court granted Maremont's motion to extend the discovery deadline on December 1, 2011. In addition, the parties recently informed the Court that they need expert discovery on the issue of damages. Because the parties have yet to complete fact discovery in this matter, especially as it relates to

8

damages based on their representations to the Court, it is premature to address whether Maremont suffered actual injury or if Defendants were unjustly enriched. *See* Fed.R.Civ.P. 56(a). Accordingly, the Court denies the parties' cross-motions for summary judgment on Count I of the Second Amended Complaint.

## II.  Stored Communications Act Claim – Count II

In Count II of the Second Amended Complaint, Maremont alleges that Defendants, without permission or authorization, used Maremont's personal Twitter password to access her personal Twitter account authoring seventeen Tweets and similarly accessed her Facebook account and entered Facebook postings, in violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et seq*. In 1986, Congress enacted the SCA as Title II of the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, 100 Stat. 1848 (1986), codified as amended at 18 U.S.C. §§ 2701-2711. *See Devine v. Kapasi,* 729 F.Supp.2d 1024, 1026 (N.D. Ill. 2010). "Congress enacted the relevant provision of the SCA, *id.* § 2701, to protect privacy interests in personal and proprietary information from the mounting threat of computer hackers 'deliberately gaining access to, and sometimes tampering with, electronic or wire communications' by means of electronic trespass." *Id.* (citation omitted). The SCA has a provision for a private cause of action, which authorizes lawsuits for unauthorized, intentional access to communications that are held in electronic storage. *See Shlahtichman v. 1-800 Contacts, Inc.,* 615 F.3d 794, 803 (7th Cir. 2010); 18 U.S.C. §§ 2701(a), 2707(a). The SCA provision at issue states that whoever "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility" and by doing so "obtains, alters, or prevents authorized

access to a wire or electronic communication while it is in electronic storage in such system" violates the SCA. *See* 18 U.S.C. § 2701(a); *see also Shefts v. Petrakis,* 758 F.Supp.2d 620, 635 (C.D. Ill. 2010).

Although Maremont admits that she never saw the Facebook posts that SFDG employees posted without her consent and that she has no copies of these entries, there is undisputed evidence in the record that Defendants accessed Maremont's personal Facebook account and accepted friend requests at least five times from September 23, 2009 through November 24, 2009. (Pl.'s Stmt. Facts ¶¶ 55-58.) Moreover, evidence in the record reveals that Defendants posted seventeen Tweets to Maremont's personal Twitter account during the relevant time period. As such, there are disputed issues of material fact whether Defendants exceeded their authority in obtaining access to Maremont's personal Twitter and Facebook accounts.

Nonetheless, Defendants argue that Maremont's SCA claim fails because she cannot establish actual damages as required under the SCA, more specifically, 18 U.S.C. § 2707(c). *See Doe v. Chao,* 540 U.S. 614, 640, 124 S.Ct. 1204, 157 L.Ed.2d 1122 (2004) (damages under Section 2707(c) include sum of actual damages suffered by plaintiff and profits made by violator as result of violation). To clarify, although the SCA allows for statutory damages, proof of "actual damages" is a prerequisite to recover any such statutory damages. *See Van Alstyne v. Electronic Scriptorium, Ltd.,* 560 F.3d 199, 205 (4th Cir. 2009); *Cornerstone Consultants, Inc. v. Production Input Solutions, LLC,* 789 F.Supp.2d 1029, 1043 (N.D. Iowa 2011); *Cf. Chao*, 540 U.S. at 626-27 (under Privacy Act, $1,000 minimum statutory damages award was available "only to plaintiffs who suffered some actual damages"). Because the parties have yet to complete discovery as it pertains to damages, it is premature for the Court to address this issue.

Therefore, the Court denies both Maremont's and Defendants' cross-motions for summary judgment as to Count II of the Second Amended Complaint.

**III.     Illinois Right of Publicity Act Claim – Count III**

In Count III of the Second Amended Complaint, Maremont alleges that Fredman and/or SFDG used her likeness for the purpose of promoting Defendants' design business and retail store without Maremont's written consent in violation of Illinois' Right to Publicity Act. The elements for an Illinois Right to Publicity Act claim include: (1) an appropriation of one's name or likeness; (2) without written consent; and (3) for another's commercial benefit. *See Blair v. Nevada Landing P'ship,* 369 Ill.App.3d 318, 322, 307 Ill.Dec. 511, 859 N.E.2d 1188 (2d Dist. 2006); 765 ILCS 1075/60 (the Act does "not affect an individual's common law rights as they existed before the effective date of this Act."). "According to the Restatement, the purpose of this tort is to protect the 'interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness.'" *Villalovos v. Sundance Assoc., Inc.,* No. 01 C 8468, 2003 WL 115243, at *3 (N.D. Ill. Jan. 13, 2003) (quoting Restatement (Second) of Torts § 652C, cmt. a (1977)); *see also Dwyer v. American Exp. Co.,* 273 Ill.App.3d 742, 210 Ill.Dec. 375, 652 N.E.2d 1351 (1st Dist. 1995). In addition, "the Restatement of Torts makes it clear that it is not the use of the plaintiff's name which constitutes a tort but rather the appropriation of the value of his name and reputation." *Hooker v. Columbia Pictures Indus., Inc.*, 551 F.Supp. 1060, 1062 (N.D. Ill. 1982). Thus, "[i]t is not enough that the defendant has adopted for himself a name that is the same as that of the plaintiff, so long as he does not pass himself off as the plaintiff or otherwise seek to obtain for himself the values or benefits of the plaintiff's name or

11

identity." *Id*. (quoting Restatement (Second) of Torts § 652C, cmt. c (1977)).[1]

Because there is no evidence in the record concerning the actual Facebook postings and their content, the Court focuses on the seventeen Tweets posted in the fall of 2009 to determine whether Maremont's Right to Privacy Act claim survives summary judgment. Viewing the facts and all reasonable inferences in Maremont's favor, she cannot fulfill the appropriation element under the Right to Privacy Act because Defendants did not pass themselves off as Maremont in the relevant Tweets. More specifically, the first of these Tweets was posted on September 21, 2009 and was linked to an SFDG blog written by Fredman explaining Maremont's accident. This blog entry also announced that during Maremont's absence, a guest blogger, Olivia Fink-Larsen, would assume Maremont's role at SFDG. It is also undisputed that once Maremont returned to SFDG in May 2010, she wrote Facebook and Twitter posts that she linked to a May 17, 2010 entry on SFDG's blog in which she announced "Your Editor is Back!" (Defs.' Stmt. Facts ¶ 28.) In these posts, Maremont thanked her temporary replacements, Olivia Fink-Larson and Michelle Doorman, "for their amazing posts on Designer Diaries in my absence and Michelle's giant contribution to the Chicago Interior Designers at the Susan Fredman Design Group as the acting Marketing Director." (*Id*.) Because Defendants did not appropriate Maremont's identity and Maremont herself recognizes that SFDG temporarily replaced her during her absence, Maremont's Right to Publicity Act claim must fail. The Court thus grants Defendants' summary judgment motion and denies Maremont's motion for partial summary

---

[1] Except for citing legal authority listing the elements of her Illinois Right of Publicity Act and Intrusion Upon Seclusion claims, Maremont fails to develop her arguments supporting these state law claims with any legal authority. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir. 2010) ("undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted).

judgment as to Count III of the Second Amended Complaint.

## IV.    Common Law Right to Privacy Claim – Count IV

The Court previously dismissed Maremont's common law right to privacy claim – without prejudice – because the Right to Publicity Act replaced the common law tort of appropriation of likeness. *See Flentye v. Kathrein,* 485 F.Supp.2d 903, 923 (N.D. Ill. 2007). Maremont then re-alleged Count IV, bringing a common law intrusion upon seclusion claim, which is also a right to privacy claim under Illinois law. An intrusion upon seclusion claim includes the following elements: "(1) an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused the plaintiffs anguish and suffering." *Cooney v. Chicago Public Sch.,* 407 Ill.App.3d 358, 366, 347 Ill.Dec. 733, 943 N.E.2d 23 (1st Dist. 2010). Under the third element of an intrusion upon seclusion claim, the matter must be private and the plaintiff must show that she "attempted to keep private facts private." *Acosta v. Scott Labor, LLC,* 377 F.Supp.2d 647, 650 (N.D. Ill. 2005). In other words, "persons cannot reasonably maintain an expectation of privacy in that which they display openly." *Id.* (citation omitted).

Here, it is undisputed that Maremont had a Twitter following of approximately 1,250 people and that she also had Facebook followers. (Pl.'s Stmt. Facts ¶¶ 34, 44.) It is also undisputed that Maremont's posts on Twitter were targeted to the design community. (*Id.* ¶ 50.) Further, Maremont signed her business emails as SFDG's Marketing Director with an invitation to "Become a fan of SFDG on Facebook" and to "Follow us on Twitter." (Defs.' Stmt. Facts ¶ 13.) Also, Maremont's Facebook and Twitter posts were often linked to the SFDG blog, "*Designer Diaries: Tales from the Interior,*" which was accessible to the public and was created

to enhance SFDG's sales.  (*Id.* ¶¶ 5, 8.)

Viewing these facts and all reasonable inferences in Maremont's favor, there is no dispute as to the material facts that the matters discussed in Maremont's Facebook and Twitter posts were not private and that Maremont did not try to keep any such facts private.[2]  In short, Maremont fails to point to any private information upon which Defendants intruded.  *See Cooney,* 407 Ill.App.3d at 367; *see also Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 417, 128 Ill.Dec. 542, 534 N.E.2d 987 (Ill. 1989) ("the core of this tort is the offense prying into the private domain of another").  Therefore, the Court grants Defendants' summary judgment motion as to Count IV of the Second Amended Complaint.

---

[2] Facebook posts are accessible only to those whom the user selects, and thus they are not strictly public.  *See Crispin v. Christian Audigier, Inc.,* 717 F.Supp.2d 965, 980 (C.D. Cal. 2010); *see also Cohen v. Facebook, Inc.,* ___ F.Supp.2d ___, 2011 WL 3100565, at *1 (N.D. Cal. June 28, 2011) ("As a 'social networking' internet site, Facebook exists because its users *want* to share information – often about themselves – and to obtain information about others, within and among groups and subgroups of persons they already know or with whom they become acquainted through using Facebook.") (emphasis in original).  Twitter posts or Tweets, on the other hand, are usually visible and accessible to the general public.  *See Senese v. Hindle,* No. 11-CV-0072 (RJD), 2011 WL 4536955, at *5 n.28 (E.D.N.Y. Sept. 9, 2011); *see also Twitter: New Challenges to Copyright Law in the Internet Age,* 10 J. Marshall Rev. Intell. Prop. L. 231, 236 (2010) (although Tweets are publicly visible by default, senders can restrict messages to their followers).

## CONCLUSION

For the these reasons, the Court grants in part and denies in part Defendants' motion for summary judgment and denies Plaintiff's motion for partial summary judgment brought pursuant to Federal Rule of Civil Procedure 56.

**Date:** December 7, 2011

                                **ENTERED**

                                _____
                                **AMY J. ST. EVE**
                                **United States District Court Judge**